## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION  15-0473-WS-N ) |
| OUTOKUMPU STAINLESS USA, LLC, | ) ) |
| Defendant. | ) |

### ORDER

This matter is before the Court on the defendant's motion for summary judgment.  (Doc. 81).  The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 82, 86, 87, 90), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be denied.


### BACKGROUND

This is an action brought by the EEOC on behalf of five individuals (for convenience, "the plaintiffs") employed by the defendant, which manufactures stainless steel.  The cold rolling area of the mill includes two annealing and pickling lines ("APL"), one hot and one cold.  To address issues concerning quantity and quality of output, as well as maintenance, the defendant decided to restructure its personnel in the cold rolling area.  In particular, the defendant decided to move from having one "Shift Leader" per shift, acting as a supervisor over both lines, to having a "Team Leader" for each line on each shift, acting as a working member of a team responsible for a single line.

According to the complaint, (Doc. 1 at 5-13), in April 2013 the defendant promoted six employees to the new position of Team Leader.  Although the plaintiffs applied for and were qualified for the position, none of them were selected.  All of the plaintiffs are African-American; all of the successful candidates are white. The only claim in this lawsuit is for race discrimination in the failure to promote the plaintiffs to Team Leader in April 2013, in violation of Title VII.

The plaintiffs are Joshua Burrell, Wallace Dubose, Steven Jones, Daniel Nickelson and Victor Oliver.  The successful candidates were Michael Adams, Matthew Dalton, William Jones, Edward Jordan, Darrel Mosley and James Mosley.  Twenty-one persons applied for a Team Leader position, all but the plaintiffs white.  One withdrew his name, and one was disqualified.  The remaining nineteen received an interview.

The eleven individuals listed above were interviewed by a panel.  Darren Gates sat on all eleven panels.[1]  George McKee sat on ten panels (all except Oliver).  John Carter sat on eight panels (all except Nickelson, Adams and Jordan).  Traci Nix (now Wells) sat on eight panels (all except Oliver, Darrel Mosley and Billy Jones).  Gates, McKee and Carter are white males; Wells is an African-American female.  In April 2013, Carter was interim director of cold rolling; Gates was team manager of the annealing and pickling department within the cold rolling area; Wells was human resources manager for the cold rolling area; and McKee was a contractor from Alabama Industrial Development Training.

After the interviews, the panel rated each applicant as an "A," "B," or "C" candidate.  Eight applicants received an "A" rating, including the six successful applicants, plus plaintiffs Dubose and Jones.  Six candidates received a "B" rating,

---

[1] The EEOC claims that Gates did not attend Oliver's interview, based on the defendant's failure to produce Gates's interview notes.  (Doc. 87 at 11; Doc. 86-4 at 182-83).  Oliver, however, testified that Gates was at his interview.  (Doc. 82-13 at 19, 29).  The EEOC cannot escape Oliver's testimony by resort to other evidence.  *E.g., Valderrama v. Rousseau*, 780 F.3d 1108, 1115 (11th Cir. 2015).

including plaintiffs Burrell and Oliver.  Five candidates received a "C" rating, including plaintiff Nickelson.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116.  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may …
consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all
reasonable inferences, must be viewed in the light most favorable to the
nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243
(11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence
supporting a party's position.[2]  Accordingly, the Court limits its review to the
exhibits, and to the specific portions of the exhibits, to which the parties have
expressly cited.

Because the EEOC does not rely on direct evidence of discrimination, the
shifting burden appropriate for cases resting on circumstantial evidence applies.
In Title VII cases alleging discrimination, the burden is first on the plaintiff to
establish a prima facie case.  If he succeeds, the employer must meet its burden of
producing evidence of one or more legitimate, nondiscriminatory reasons for the
adverse employment action. The burden then shifts back to the plaintiff to show
that the employer's proffered reasons are a mere pretext for illegal discrimination.
*E.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002).

**A.  Prima Facie Case.**

For present purposes, the defendant assumes the EEOC can establish a
prima facie case. (Doc. 82 at 24 n.24).  The Court therefore advances to the second
step of the analysis.

---

[2] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it
may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc*., 144
F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the
referenced portions of these [summary judgment] materials, but is not required to do
so.").  "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and
"[l]ikewise, district court judges are not required to ferret out delectable facts buried in a
massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d
1057, 1061 (11th Cir. 2011) (internal quotes omitted).

**B.  Legitimate, Non-Discriminatory Reasons.**

As its legitimate, non-discriminatory reasons for not promoting the plaintiffs, the defendant identifies a number of issues with each of them.  The defendant says it did not promote Burrell because of perceived deficiencies in his experience, process knowledge, learning speed, self-confidence and leadership.  (Doc. 82 at 12-13).  The defendant says it did not promote Dubose because of perceived deficiencies in his self-control, initiative, reliability and work attitude.  (*Id*. at 13-14).  The defendant says it did not promote Jones because of perceived deficiencies in his process knowledge, seriousness, communication skills and leadership, combined with only an average skill set.  (*Id*. at 15).  The defendant says it did not promote Nickelson because of perceived deficiencies in his leadership, initiative and learning ability, combined with only an average skill set.  (*Id*. at 14).  The defendant says it did not promote Oliver because of perceived deficiencies in his ability to communicate, lead and delegate.  (*Id*. at 12).

To meet its intermediate burden, a defendant must articulate a reason "legally sufficient" to justify judgment in its favor and must support its articulated non-discriminatory reason "through the introduction of admissible evidence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981).  The EEOC asserts that the defendant has not met this burden.  (Doc. 87 at 28-29).

"[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific.  …  This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 258 (internal quotes omitted).  The EEOC complains that the defendant's articulated reasons are subjective, but "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it

based its subjective opinion." *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc).

The EEOC denies that the defendant has provided any clear and reasonably specific factual basis for its subjective assessments of the plaintiffs. (Doc. 87 at 28-29). Based on the evidence cited by the defendant in articulating its reasons for not promoting the plaintiffs, the Court disagrees.

With respect to Dubose's lack of initiative, Wells testified he had difficulty picking up a new task after finishing another. (Doc. 82-11 at 20, 30). With respect to his reliability, Wells and Gates referenced a recurring tendency to wander away from the line and be unavailable when the line started up, requiring his shift leader to have to track him down. (Doc. 82-5 at 38, 63, 101; Doc. 82-11 at 25-26). With respect to his work attitude, Gates stated that Dubose hated the APL and would repeatedly tell Gates he was going to quit his job and rejoin the military. (Doc. 82-5 at 62-63).

With respect to Jones's process knowledge, Gates and Wells stated that he had been trained as an entry/exit operator but had only begun training on the process portion of the lines. (Doc. 82-5 at 41, 105-06; Doc. 82-11 at 83). With respect to seriousness, Gates described Jones as the "line clown," with no joke told or prank pulled without his involvement. (Doc. 82-5 at 56). With respect to leadership, Gates expressed concern that no one would follow a clown like Jones, (*id*. at 73, 105), while Wells recalled that, when Jones was asked in his interview how he would communicate to his team a policy he didn't agree with, Jones responded that he would tell his team he didn't agree with the policy but was just doing it because he was told to do so – an approach Wells says she considered incompatible with good leadership. (Doc. 82-11 at 48-49). As for communication, Wells cited Jones's performance in his interview. (*Id*. at 20).

With respect to Nickelson's skill set, Gates stated he was slow on the entry end of the lines, which kept the lines from running top speed and which resulted in him being moved to exit operator in order to speed up the process. (Doc. 82-5 at

57, 59).  With respect to his learning curve, Gates stated that, while Nickelson had eventually learned to be an exit operator, he was very slow in doing so.  (*Id*. at 57).  With respect to his initiative, Gates testified that Nickelson "presented absolutely no help" whenever a line went down but would instead go sit in the air conditioning and remain there until someone specifically directed him what to do.  (*Id*. at 58).  With respect to leadership, in addition to Gates's observations, Wells testified that Nickelson did not take charge of tough situations and never stepped out to lead anything when problems arose on the line.  (Doc. 82-11 at 19, 22).

As to Oliver and Burrell, the EEOC makes only the plainly incorrect claim that the defendant has articulated no reasons at all.  (Doc. 87 at 29 n.21).  In fact, the defendant set forth its articulated reasons for not promoting these two with comparable clarity and detail.  (Doc. 82 at 12-13).  Indeed, the EEOC elsewhere in its brief acknowledges that the defendant has articulated reasons for their non-promotion.  (Doc. 87 at 33, 36).

In short, the defendant has carried its intermediate burden.  The focus thus shifts to pretext.

### C.  Pretext.

At the third stage of the analysis, the question is whether "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Burdine*, 450 U.S. at 252.  The plaintiff "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision.  This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination."  *Id*. at 255.  The plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id*.; *accord Kragor v. Takeda Pharmaceuticals America, Inc*., 702 F.3d 1304, 1308 (11th Cir. 2012); *Jackson v. State Tenure Commission*, 405 F.3d 1276, 1289 (11th

Cir. 2005).  Whichever approach is taken, "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024-25; *accord id.* at 1037.

When a plaintiff employs the indirect approach, "[t]he inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for [discrimination]." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (internal quotes omitted).  The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008).  To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

Although "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason," *Springer v. Convergys Customer Management Group Inc.,* 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis in original) (internal quotes omitted), "[w]here the plaintiff succeeds in discrediting the employer's proffered reasons, the trier of fact may conclude that the employer intentionally discriminated." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 (11th Cir. 2005).  Because one "permissible inference" flowing from the demonstrated falsity of the employer's articulated reasons is that of unlawful discrimination, "once the plaintiff

introduces evidence sufficient to permit the factfinder to disbelieve the employer's proffered explanations, summary judgment is not appropriate ...."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1530 (11th Cir. 1997).  What *Combs* phrased as a categorical, the en banc Court in *Chapman* later qualified, explaining that summary judgment will "sometimes be available to an employer in such a case," as when the evidence of falsity is relatively "'weak'" and the evidence of nondiscrimination "'abundant and uncontroverted.'"  229 F.3d at 1025 n.11 (quoting *Reeves*, 530 U.S. at 148).

Because his case sets the stage for the other plaintiffs, the Court looks first to Dubose.  As noted, Dubose received an "A" rating, which placed him in the top eight candidates.  As also noted, the defendant in this litigation has identified four problems with Dubose that prevented him from being in the top six:  poor self-control, lack of initiative, unreliability and bad work attitude.  However, and as the EEOC notes, (Doc. 87 at 38), this is not the list the defendant provided in its response to Dubose's charge of discrimination.  Instead, the defendant (through Wells) told the EEOC that Dubose was not promoted "based on [his] lack of exhibited leadership and initiative within his team."  (Doc. 86-22 at 5, 6).  That is, of the four reasons the defendant now gives for not promoting Dubose, only one was asserted in the administrative proceedings, and one reason given in the administrative proceedings has vanished in this litigation.  In consequence, the defendant's current position on why it did not promote Dubose bears little resemblance to that it presented to the EEOC.

"We have recognized that an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext."  *Hurlbert v. St. Mary's Health Care System, Inc*., 439 F.3d 1286, 1298 (11th Cir. 2006).  This principle applies when a defendant in litigation offers reasons it did not offer the EEOC.  *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012) ("Perhaps most notably [as evidence of pretext], none of the five reasons proffered for Crews's termination was ever provided to the Georgia

Department of Labor, the POST organization, or the EEOC."). The inference of pretext is only strengthened when, as here, the defendant's response to the charge of discrimination is a lengthy, finely crafted work that appears to be the product of much time and deliberation, making it unlikely that ¾ of the employer's true reasons for not promoting Dubose were accidentally omitted. And strengthened further when the author of the response is, as here, one of the decision-makers, who could not easily fail to be aware of the reasons for the employment decision.

The defendant does not deny the evidentiary value of an employer's inconsistent identification of legitimate reasons for its action. Instead, the defendant denies it has been inconsistent. (Doc. 90 at 14-15). In doing so, however, the defendant completely ignores its response to the EEOC, even though the EEOC made that document the centerpiece of its argument regarding inconsistency. The EEOC's evidence thus stands unrebutted and unsullied.

The EEOC also relies on evidence that, after the promotions were announced, Carter told Dubose that, had the panel known Dubose had a degree, he might have moved from seventh position into sixth. (Doc. 86-14 at 60-61). The EEOC points out that the panel had Dubose's resume', which plainly listed an associate's degree. (*Id*. at 61, 129). A reasonable inference from this evidence is that the defendant knew both that Dubose had a degree and that this placed him among the top six candidates regardless of any issues with initiative (or with the additional matters recently asserted by the defendant), which would mean those issues were not the reason Dubose was not promoted. The defendant offers no response to this damaging evidence. (Doc. 90 at 14-15).

The Court concludes that, under *Burdine*'s indirect approach, a properly functioning jury could find that the defendant's articulated reasons for not promoting Dubose were not its true reasons for not promoting him. The Court further concludes that, should the jury make such a finding, it could properly make

10

the additional finding that race was the true reason for the promotion decision.[3]

Under Rule 404(b), "me, too" evidence can be admissible to prove that the defendant harbored a discriminatory intent. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008). Thus, in *Goldsmith*, the plaintiff could rely on evidence that two supervisors involved in his termination discriminated against co-workers on the basis of race and protected activity. *Id.* at 1268, 1286. In weighing the probative value of such evidence, differences matter. "[A] key similarity is that [the other decision] involved the same actor making the same kind of personnel decision." *Denney v. City of Albany*, 247 F.3d 1172, 1189 (11th Cir. 2001).[4] The probative value is less when the other incidents "concerned a different position," with "different applicants and a different selection process," conducted years earlier. *Id.*

These considerations indicate that the EEOC's "me, too" evidence from Dubose is particularly strong. All plaintiffs complain of denial of promotion to Team Leader, with all decisions made at the same time, by the same decision-makers, using the same selection process. As discussed above, a properly functioning jury could find that the defendant discriminated against Dubose based on his race. From such a finding, a properly functioning jury could infer that the defendant likewise discriminated against all black applicants for Team Leader based on their race; indeed, it seems unlikely that the defendant would discriminate against Dubose based on his race while simultaneously ignoring the race of the other plaintiffs.

---

[3] The defendant has not attempted to show this to be the unusual case envisioned by *Chapman* in which summary judgment is proper despite the existence of evidence sufficient to permit the jury to disbelieve the defendant's proffered explanations. Given the defendant's admission that Dubose was one of eight "A" candidates for promotion, any such argument would be difficult to sustain.

[4] The kind of personnel decision at issue in *Denney* was promotion. 247 F.3d at 1189.

Moreover, the defendant (as it did regarding Dubose) altered and expanded its list of reasons for not promoting at least three of the four remaining plaintiffs, and that inconsistency constitutes additional evidence of pretext.  The defendant told the EEOC it failed to promote Jones due to lack of leadership skills, including communication, (Doc. 86-25 at 5; Doc. 90 at 16), but on motion for summary judgment it adds problems with seriousness, process knowledge and skill set. (Doc. 82 at 15).[5]  The defendant told the EEOC it did not promote Oliver "based on [his] inability to display the communication skills necessary for this position," (Doc. 86-24 at 5), but on the instant motion it adds concerns with leadership and delegation.  (Doc. 82 at 12).[6]  The defendant told the EEOC it did not promote Nickelson due to lack of demonstrated leadership skills, (Doc. 86-23 at 5), but it now adds problems with initiative, learning speed and skill set.  (Doc. 82 at 14).[7]

---

[5] The defendant does not deny or explain away this inconsistency.  (Doc. 90 at 16-17).

[6] The defendant does not deny or explain away this inconsistency.  (Doc. 90 at 16).

[7] The defendant says it actually did claim in its EEOC response that Nickelson was not selected due to lack of initiative and poor learning speed.  (Doc. 90 at 15).  While the defendant's EEOC response does state that "candidates should show initiative … and perform effectively," (Doc. 86-24 at 5), this general observation is a canned statement that appears near the end of all four submitted EEOC responses.  It is not directed at Nickelson and does not appear in the single paragraph in which the defendant, in all of its responses, identifies the reasons for the particular plaintiff's non-promotion.

The defendant also suggests that "exhibiting initiative and superior job performance certainly are not inconsistent with demonstrated leadership."  (Doc. 90 at 15).  Perhaps, but the defendant's implicit suggestion that, by asserting lack of leadership it was also asserting problems with initiative and job performance, is undermined by its response to the EEOC concerning Dubose, which lists lack of leadership and initiative as separate reasons for not promoting him.  (Doc. 86-22 at 5).

The defendant is free to pursue these arguments at trial, but a properly functioning jury could easily find that the defendant did not, before the EEOC, accuse Nickelson of lacking initiative or adequate learning speed.

The defendant stresses that, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual," *Chapman*, 229 F.3d at 1037, and it argues the EEOC cannot do so.  (Doc. 90 at 5-6).  For the reasons set forth above, the Court disagrees.  To the uncertain extent the defendant suggests that a plaintiff can avoid summary judgment only by specifically and separately addressing and undermining each reason the defendant has articulated (that is, by resort to *Burdine*'s indirect method of proof), its position is inconsistent with Supreme Court and Eleventh Circuit precedent.  It is therefore immaterial that the EEOC may not have, under the indirect approach, created a fact issue as to the falsity of each reason the defendant has articulated for not promoting Burrell, Jones, Nickelson and Oliver;[8] its "me, too" evidence permits a properly functioning jury, under the direct approach, to conclude that a discriminatory reason more likely motivated the defendant.  That evidence overshadows all reasons articulated by the defendant and supports an inference that each of them is a pretext for discrimination.

The Court concludes that a properly functioning jury could find that the defendant discriminated against Burrell, Jones, Nickelson and Oliver because of their race.[9]

---

[8] The defendant's inconsistency in articulating its reasons creates a fact issue as to those reasons first appearing after this lawsuit was filed; the Court assumes without deciding that the inconsistency does not taint those reasons the defendant presented to both the EEOC and the Court.  *But see Chapman*, 229 F.3d at 1050 (Birch, J., concurring in part and dissenting in part) ("I likewise find persuasive the reasoning of the Third and Sixth Circuits where they find that the proffering of a large number of arguably pretextual reasons may cast sufficient doubt on the remainder of the proffered reasons, such that summary judgment should be denied.").

[9] The EEOC has attempted to show pretext through several additional means. Because the matters discussed above are sufficient to create a jury issue as to pretext, the Court need not consider those matters.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **denied**.

DONE and ORDERED this 8th day of September, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE